IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

## DORIS HUTTCHSON v. DONALD COLE, M.D., ET AL.

**Extraordinary Appeal from the Circuit Court for Wilson County**
**No. 10357  Clara Byrd, Judge**

_____

**No. M1999-00204-COA-R10-CV - Decided April 7, 2000**

_____

Defendants Donald Cole, M.D., and National Medical Hospital of Wilson County, Inc., appeal the trial court's nonfinal order denying their motions for summary judgment in this medical malpractice action brought against them by Plaintiff/Appellee Doris Huttchson. We granted the Defendants' application for an extraordinary appeal[1] to determine the sole issue of whether Huttchson's cause of action is barred by the one-year statute of limitations applicable to medical malpractice actions.[2] Based upon the undisputed record evidence, we conclude that Huttchson's action against Dr. Cole and the Hospital is time-barred, and we reverse the trial court's order denying their motions for summary judgment.

**Tenn. R. App. P. 10 Extraordinary Appeal by Permission; Judgment of the Circuit Court Reversed and Remanded.**

FARMER, J., delivered the opinion of the court, in which HIGHERS and LILLARD, JJ., joined.

Thomas W. Lawrence, Jr., and Richard F. Russell, Nashville, Tennessee, for Appellant Donald Cole, M.D.

William C. Moody, Jr., Nashville, Tennessee, for Appellant National Medical Hospital of Wilson County, Inc.

F. Michie Gibson, Jr., and T.J. Cross, Nashville, Tennessee, for Appellee, Doris Huttchson.

### OPINION

For purposes of these summary judgment proceedings, the following facts were undisputed. On January 27, 1997, Huttchson underwent an endoscopic examination of her gastrointestinal tract.

_____

[1]*See* Tenn. R. App. P.10.

[2]*See* Tenn. Code Ann. §§ 28-3-104(a)(1), 29-26-116(a) (1980 & Supp. 1996).

Defendant Donald Cole, M.D., performed the procedure at the Defendant Hospital's surgical facilities, and Defendant Maurice Gilbert served as the anesthesiologist for the procedure.[3] Prior to performing the endoscopic procedure, Dr. Cole agreed that Huttchson would "be put to sleep" during the procedure. Huttchson specifically requested general anesthesia because of difficulties she had experienced during a prior endoscopic procedure.

The endoscopic procedure required Dr. Cole to "run a tube down" Huttchson's throat. Prior to the procedure, a nurse visited Huttchson in the Hospital's preoperative area and told Huttchson that "she needed to see [her] throat." When Huttchson opened her mouth, the nurse, without warning, sprayed a local anesthetic in her throat. The spray startled Huttchson, and she choked and turned her head to one side. As a result, the nurse accidentally sprayed Huttchson's face. The spray caused Huttchson's skin to tingle and her eyes to burn. Huttchson complained to the nurse that she had sprayed the anesthetic in Huttchson's face, but the nurse "never offered [her] something to get it off with."

When Huttchson regained consciousness after the procedure, she discovered that her "eyes were burning and they were red." Later in the day, when Huttchson returned home, she noticed that her eyes were watering and "itching real bad." By this time, her skin also felt like it was burning, so Huttchson placed a cold, wet cloth on her face. Later that night, Huttchson observed that her face was beginning to swell, especially in the area around her left eye. When Huttchson awoke the next morning, her eyes were swollen shut. In the days following the procedure, Huttchson developed a blister under one eye, and a green discharge began to ooze from her eyes. Huttchson subsequently sought treatment for these conditions from an optometrist and a dermatologist. On February 11, 1997, Huttchson's optometrist confirmed that Huttchson had an eye infection and that her eye injury was caused by the anesthetic spray.

In the months following the accident, Huttchson continued to experience symptoms that she attributed to being sprayed in the face with the anesthetic. In September 1998, when she gave her deposition, Huttchson still suffered from headaches, recurring eye infections, blurred vision, alternately watery and dry eyes, swelling around the left eye, increased sensitivity to sunlight, burning, and other discomfort.

Although Huttchson's injury occurred on January 27, 1997, Huttchson did not file her complaint against the Defendants until January 28, 1998, more than one year later. Apparently, Huttchson mistakenly believed that her injury occurred on January 28, 1997, because a statement she received from Dr. Cole erroneously identified that as the date of the procedure. Huttchson's amended complaint correctly identified the date of the procedure as January 27, 1997.[4]

---

[3]Defendant Maurice Gilbert is not a party to this appeal.

[4]Huttchson also conceded on appeal that January 27, 1997, was the correct date. In any event, we note that Huttchson's mistaken belief as to the date of her injury did not toll the limitations period. *See Brashears v. Knoxville Police Dep't*, No. 03A01-9809-CV-00298, 1999 WL 93582,

Dr. Cole filed a motion to dismiss Huttchson's complaint on the ground, ***inter alia***, that Huttchson's claim for medical malpractice was barred by the one-year statute of limitations. Dr. Cole attached several exhibits to his motion, including an affidavit and an operation report, thereby effectively converting his motion into one for summary judgment.[5] The Hospital likewise moved for summary judgment based upon the statute of limitations.

In opposing the Defendants' motions, Huttchson contended that her cause of action did not accrue until February 11, 1997, when she visited her optometrist and discovered that the source of her eye injury was a chemical burn. The trial court denied the Defendants' motions, and this appeal followed.

In Tennessee, the statute of limitations for medical malpractice actions is one year. ***See*** Tenn. Code Ann. § 29-26-116(a)(1) (1980); ***see also*** Tenn. Code Ann. § 28-3-104(a)(1) (Supp. 1996). The statute provides, however, that "[i]n the event the alleged injury is not discovered within the said one (1) year period, the period of limitation shall be one (1) year from the date of such discovery." Tenn. Code Ann. § 29-26-116(a)(2) (1980). Our supreme court has interpreted this codification of the discovery rule to mean that the statute of limitations commences to run when the patient discovers, or reasonably should have discovered, in the exercise of reasonable care and diligence, "(1) the occasion, the manner, and the means by which a breach of duty occurred that produced [the patient's injury]; and (2) the identity of the defendant who breached the duty." ***Shadrick v. Coker***, 963 S.W.2d 726, 733 (Tenn. 1998) (quoting ***Stanbury v. Bacardi***, 953 S.W.2d 671, 677 (Tenn. 1997)). In order to trigger the commencement of the limitations period, the patient's knowledge need not include the precise nature of the patient's claim or the extent of her injury. ***See Shadrick***, 963 S.W.2d at 733. The patient need only be aware that she has sustained an injury and that the injury resulted from the defendant's wrongful or tortious conduct. ***See id***. at 733-34.

Applying these principles to the record before us, we conclude that Dr. Cole and the Hospital were entitled to summary judgment on their statute of limitations defense. We reach this conclusion because Huttchson's own testimony revealed that, on the date of her outpatient surgery, January 27, 1997, Huttchson knew both (1) that she had sustained an injury and (2) that the injury was caused by the nurse's action of accidentally spraying an anesthetic in her face and eyes.

First, Huttchson's deposition testimony revealed that she was aware at the time of the accident that the nurse had sprayed the anesthetic in her face. Huttchson testified that "the nurse came along and said to me she needed to see my throat, and when I opened my mouth she started spraying, and it went all over my face." Huttchson also testified that she was aware some of the

at *4 (Tenn. Ct. App. Feb. 25, 1999) (***no perm. app. filed***).

[5]***See Pacific E. Corp. v. Gulf Life Holding Co.***, 902 S.W.2d 946, 951 (Tenn. Ct. App. 1995) (concluding that, pursuant to Tenn. R. Civ. P. 12.02, movant's reliance upon matters outside pleadings converts motion to dismiss into motion for summary judgment).

spray actually landed in her eyes. Right after the accidental spraying, Huttchson wiped her face and both eyes.

Huttchson's deposition testimony further revealed that, on the day the procedure was performed, she was aware that the nurse's act of spraying the anesthetic had caused injuries to her face and eyes. Huttchson testified that, after the nurse sprayed the anesthetic in her face, her skin tingled and her eyes burned. Later the same day, Huttchson noticed that her face and eyes were "real red" and that her eyes began to itch "real bad."

Huttchson also testified to a conversation that she had with her daughter after she arrived home on the evening of January 27, 1997:

Q. Did you have any visitors at home that night?
A. My youngest daughter came by.
. . . .
Q. Did you mentioned [sic] to her what happened with the spray?
A. Yes.
Q. Do you remember what you told her?
A. She was asking me why my face was red and my eyes, and I told her what happened, and she told me I needed to see a doctor.
. . . .
Q. She said you need to see a doctor. Did you agree with her?
A. Yes, I did.

According to Huttchson, she tried to call Dr. Cole's office that day to complain about the injuries to her face and eyes, but Dr. Cole did not return her call. Huttchson did talk to an employee in Dr. Cole's office, and she described the conversation that took place between them:

Q. You called [Dr. Cole's] office once that day?
A. Yes.
Q. Did you get an answer?
A. Someone answered, I don't know who.
Q. A lady?
A. Yes.
Q. What did you tell her?
A. I told her about the spray in my eyes, and that I was having headaches and my face was itching and burning.
Q. What did she say?
A. She said I'll let you talk with Dr. Cole, and I gave the number for him to call me, and he never called.

Based on the foregoing testimony, we conclude that Huttchson either knew, or should have known, on January 27, 1997, (1) the occasion, manner, and means by which a breach of duty

occurred that produced her injuries; and (2) the identity of the defendant who breached the duty. ***See Shadrick***, 963 S.W.2d at 733. On the morning of January 27, 1997, Huttchson knew that a nurse at the Hospital had accidentally sprayed an anesthetic in her face and eyes. Huttchson also knew that, as a result of this accident, she suffered injuries to her face and eyes in the form of redness, itching, and burning. These injuries were sufficiently serious to convince Huttchson and her daughter, by the evening of January 27, 1997, that Huttchson should see a doctor. Under these circumstances, Huttchson cannot avoid summary judgment by claiming that she did not know the extent of her injuries until February 11, 1997, when her optometrist confirmed that her eye condition resulted from a chemical burn. ***See id***.

Accordingly, the trial court's order is reversed, and this cause is remanded for further proceedings. Costs of this appeal are taxed to Plaintiff/Appellee Doris Huttchson, for which execution may issue if necessary.